## In re FIRST NAT. BANK OF ARTHUR, ILL., et al.

District Court, E. D. Illinois.

May 14, 1938.

Thompson, White & Ingram, of Sullivan, Ill., for petitioner.

Hutton & Clark, of Danville, Ill., for respondent.

LINDLEY, District Judge.

The petitioners are stockholders of the First National Bank of Arthur. They seek an order directing the shareholders' agent to distribute the funds in his hands to the stockholders upon a basis different from that which has heretofore been followed. The facts have been stipulated and the issue is one entirely of law.

There were six stockholders in the First National Bank of Arthur. E. W. Boyd held 22 shares; Calida Investment Company, 333 shares; Everett House, 10 shares; C. H. McDonald, 20 shares; Vesta L. McDonald, 93 shares; Alta B. Jones, 22 shares—making a total of 500 shares. The stock held by the Calida Investment Company was formerly that of Mrs. Cora D. Luke. The petitioners are the last four mentioned stockholders.

In May, 1934, a receiver having been appointed, the Comptroller levied an assessment upon the capital stock of the bank of 100 per cent. of the par value, aggregating $50,000. Boyd paid 13.545 per cent. of his assessment or $298; Cora D. Luke paid, in settlement of a suit against her, in satisfaction of the assessment against the Calida Investment Company upon stock transferred by her to that company $23,000, being 69.696 per cent. of the par value of the stock formerly held by her. Each of the petitioners paid 100 per cent. except Vesta McDonald, who paid 80.537 per cent. or $7490.

Thereafter all debts of the banking association were paid. The receiver was discharged, and the shareholders appointed an agent, pursuant to statute, who has since proceeded with administration of the remaining assets, converting them into cash and distributing them to the stockholders. The dividends have been directed by this court and have been made to each shareholder in the proportion the amount paid by him upon his assessment bore to the total amount paid on assessments. As an illustration, Vesta McDonald contributed a little over 20 per cent. of the total assessments paid to the receiver. Consequently, on each dividend, she has been paid the same percentage of the amount distributed.

The petitioners contend that there first should have been set aside, to the credit of those that have paid their assessments in full, an amount equivalent to 19.46 per cent. of the principal amount of their respective amounts so paid, to equalize the percentage of assessments paid by said shareholders with the percentage not paid by Vesta McDonald, who paid 80.53 per cent. of her assessment; that thereafter the agent should

have set aside to the credit of the shareholders, Everett House, C. H. McDonald, Alta B. Jones, and Vesta McDonald an amount equal to 10.84 per cent. of the amount of their respective assessments paid by them, in order to equalize the said shareholders, before any distribution was made to Cora D. Luke or the Calida Investment Company, who paid only 69.69 per cent. of the $33,300 assessment; and that thereafter there should have been set aside to the credit of House, C. H. McDonald, Vesta McDonald, Jones, Calida or Cora D. Luke, before any amount was distributed to Boyd, an amount equal to 19.36 per cent. of their assessments, in view of the fact that Boyd paid only 13.54 per cent. of his assessment. Following this basis of computation, it is alleged that Calida Investment Company has been overpaid $1,304.32 and that there is due an additional amount to Everett House of $188.10; to C. H. McDonald $359.21; to Alta Jones $405.82; and to Vesta McDonald $427.88. This method of computation, it seems, is that recommended by the Comptroller of the Currency.

■ The distribution is governed entirely by title 12, U.S.C., § 197, 12 U.S.C.A. § 197, where, inter alia, it is provided that after assets have been delivered to a shareholders' agent, the proceeds thereof shall be distributed as follows:

"First. To pay the expenses of the execution of the trust to the date of such payment.

"Second. To repay any amount or amounts which have been paid in by any shareholder or shareholders of such association upon and by reason of any and all assessments made upon the stock of such association by the order of the Comptroller of the Currency in accordance with the provisions of the statutes of the United States; and

"Third. The balance ratably among such stockholders, in proportion to the number of shares held and owned by each. Such distribution shall be made from time to time as the proceeds shall be received and as shall be deemed advisable by the said comptroller or said agent. (June 30, 1876, c. 156, § 3, 19 Stat. 63; Aug. 3, 1892, c. 360, 27 Stat. 345; Mar. 2, 1897, c. 354, 29 Stat. 600; Mar. 3, 1911, c. 231, § 291, 36 Stat. 1167.)"

There are no decisions of other courts interpreting this section or throwing any light upon the issue raised in the present proceeding.

The language of the statute is clear and, under the second paragraph of the act quoted, it is the duty of the shareholder's agent, after paying expense of the execution of the trust, to apply the balance upon the repayment to the respective shareholders of the amounts which they have paid upon and by reason of assessments made by order of the Comptroller of the Currency. Congress indicated no intention of any other basis for distribution than in accordance with the respective amounts paid by the respective shareholders irrespective of the percentage of the assessments paid. Obviously, if the assets were sufficient to repay in full all of the assessments paid, the provisions of the third paragraph would become applicable. Under them, any balance remaining after repayment of the assessments is to be distributed ratably among the stockholders in proportion to the number of shares held and owned by each. The two paragraphs indicate a clear intent upon the part of Congress that a shareholders' agent, after marshaling and liquidating the assets in his hands, shall pay, first, the costs of administration; second, the amounts paid by way of assessment; and, third, the balance to the shareholders in proportion to their respective stock holdings.

■ The petitioners direct the court's attention to section 194, title 12, U.S.C., 11 U.S.C.A. § 194, under which, if the Comptroller retains jurisdiction after payment of debts and proceeds to administer upon the remaining assets, it is provided that he shall pay the proceeds to the shareholders in proportion to the stock by them respectively held, and attention is directed to the announcement by the Supreme Court, in Cook County National Bank v. U. S., 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537, that this section furnishes a complete code for the distribution of the effects of an insolvent bank and that its provisions are not to be departed from. See, also, Ames v. American Nat. Bank of Portsmouth, 163 Va. 1, 176 S. E. 204.

It is not necessary to decide now whether under the section last cited it is necessary to distribute dividends to persons who pay assessments in the manner suggested by petitioners, for the section quoted has no applicability to the issue involved. Here we are governed by the provisions of section 197, which is complete in itself and contains explicit instructions as to the duties of the agent, his obligation with respect to the payment of dividends to those who have

paid assessments and the manner in which he shall make such distribution.

To my mind the direction to repay the assessments means that each person paying any part of an assessment shall participate in the dividends to the same extent and in the same percentage as he contributed to the total amount paid on assessments regardless of whether he paid all of his assessment. Any other construction, it seems to me, would do violence to the language of the statute.

Accordingly the petition will be denied.

The foregoing includes my findings of fact and conclusions of law.

Proper decree shall be submitted.