## In re FIRST NAT. BANK OF HOOPESTON, ILL.

### No. 12.

District Court, E. D. Illinois.

May 23, 1938.

G. II. Couchman, of Hoopeston, Ill., for petitioner.

C. F. Dyer, of Hoopeston, Ill., for respondents.

Gunn, Penwell & Lindley, of Danville, Ill., for William and D. J. McFerren and Miles Odle, trustee.

Miles Odle, of Hoopeston, Ill., Trustee pro se.

James H. Dyer, of Hoopeston, Ill., pro se et al.

Acton, Acton & Baldwin, of Danville, Ill., for I. E. and Margaret Merritt.

LINDLEY, District Judge.

The shareholders' agent, who has received the assets of the First National Bank of Hoopeston, pursuant to title 12 U.S.C. § 197, 12 U.S.C.A. § 197, has filed his petition requesting the instructions of the court with reference to distribution of proceeds of assets to those who have paid assessments upon their bank stock. Various interested parties have filed answers setting up theories upon which distribution should be made and various stockholders, who have paid their assessments in full, have filed their answers disclosing a conflicting theory. On file are a stipulation of facts between the agent and the trustee under section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, of William and D. J. McFerren, debtors, and another between the agent and J. H. Dyer et als., and still another between I. E. Merritt et al., and J. H. Dyer et als., and by agreement of all parties in interest, the court has taken into consideration as part of the evidence herein, the proceedings of this court in the aforementioned debtor proceeding and in the special matter of the receivership of the bank in this court. The facts appearing in the stipulations and in these records are largely undisputed and the questions involved legal in character.

After the closing of the bank, a receiver was appointed who, under the direction of the Comptroller, administered upon the estate until all claims were satisfied. Thereupon, in pursuance of section 197, title 12 U.S.C., 12 U.S.C.A. § 197, the remaining assets were delivered to the shareholders' agent. During the administration of the receiver and prior to the delivery of the remaining assets to the agent, an assessment of 100 per cent upon the capital stock was levied by the Comptroller. Some of the stockholders paid this assessment in full. Some of them paid it in part. Some of them compromised such indebtedness as they owed the bank, including their stock assessments and promissory notes and in one instance the receiver sold his claim for an assessment and other indebtedness to a third party for 67⅔ cents on the dollar and the assignee collected the same in full from the debtor estate above referred to. The questions involved are as to the proper proportion of the respective stockholders in the distribution to be made by the shareholders' agent.

This court has recently announced its construction of section 197 in a somewhat similar proceeding involving the distribution of assets in the hands of shareholders' agent of the First National Bank of Arthur. In re First Nat. Bank of Arthur, Ill., 23 F.Supp. 253. To the interpretation there given to the section the court adheres.

The second paragraph of the there quoted act controls distribution made by shareholders' agent to persons who have paid assessments. Under this paragraph it is the shareholders' agent's duty, after payment of the expenses of execution of the trust, to repay ratably to those who have paid their assessments, the amounts to be distributed. In other words, each one who has made a payment upon his stock assessment must be paid the same percentage of the distribution as his payment upon his stock assessment constituted of the total amount paid upon stock assessments. This interpretation disposes of all questions involving stockholders who have paid 100 per cent or a portion thereof in cash and serves as a guide post for the determination of the other questions involved.

Mark R. Koplin was a stockholder whose stock assessment liability was $1,650. This he paid in full. In addition he owed the bank a promissory note which he settled for approximately 50 cents on the dollar, by authority of the Comptroller, duly approved by this court. It is insisted that he shall not be treated as a stockholder who paid his assessment in full for the reason that he did not pay his note in full. But the settlement with Koplin upon his note was an independent transaction. It was a complete discharge of his indebtedness, a legal accord and satisfaction, behind which none of the parties may go. It follows, therefore, that the fact that

he compromised his note for less than the amount due in no wise affects his statutory right under section 197 to share in the distribution of proceeds by the shareholders' agent, as one who has paid his stock assessment in full.

I. E. Merritt and Margaret Merritt were stockholders of the bank. The assessment of Mr. Merritt was $15,000 and that of Mrs. Merritt $4,550. In addition, Mr. Merritt was indebted to the bank in the sum of $4,107 and his wife in the sum of $5,731.42. The receiver petitioned this court setting up these facts and representing further that the Merritts had offered to deliver to the receiver in full satisfaction of both their stock assessments and their personal indebtedness, certain real estate, located in the city of Hoopeston. The Comptroller authorized the acceptance of this offer and the court. approved the action and authorized the receiver to accept in full of all said liabilities, the said real estate. This property, according to the testimony originally, cost the Merritts in the neighborhood of $20,000. The receiver sold it September 28, 1937 under authority of the Comptroller of the Currency, duly. approved by this court, for $5,600. Nothing else appears in the evidence as to the value of the property. In the absence of further proof, the court assumes that the fair cash market value of the property was the sale price of $5,600.

The Merritts insist that the compromise of their respective liabilities should be treated by this court as a payment in full of their stockholders' liability and of their other indebtedness. I am. unable to accede to this suggestion. The compromise was not based upon any agreed value of the real estate. It was a settlement in kind, a delivery of property in satisfaction of indebtedness without regard to its value. But it did not augment the funds of the trust being administered by the receiver beyond its fair cash market value of $5,600. Consequently I conclude that the total consideration received by the receiver from the Merritts should be. considered as $5,600.

The receiver credited $1 of this consideration to each of the two stockholders upon their stock assessments and the balance upon their personal indebtedness to the bank. This the court believes was erroneous. The Merritts paid $5,600 in satisfaction of all liabilities. No reason appears why a court of equity should not direct that the resulting credit should be applied proportionately upon the total indebtedness, including both the stock assessment and the personal liability. Consequently in making distribution the Merritts should be treated as persons who have paid that proportion of their stock assessment represented by a proportionate application of $5,600 to all of their indebtedness. This percentage of their stock assessment they have paid, and to the extent of these payments they should share proportionately with all stockholders who have paid assessments.

W. B. McFarland was a stockholder of the bank whose assessment was $1,000. In addition he was in debt to the bank upon direct obligations in the sum of $7,100. In addition he was surety for Arthur McFarland in the sum of $522 and J. Earl McFarland in the sum of $1,722.03. The receiver petitioned this court, representing that Mr. McFarland was insolvent and that he had tendered $2,500 in cash in full settlement of the stock assessment and his personal liabilities. The debt of Arthur McFarland was paid in full. Upon this petition it appeared from a letter of the Comptroller that Mr. McFarland had offered $2,500 in full satisfaction of his stock assessment and upon his liabilities upon his two notes and for a covenant not to sue upon the liability of J. Earl McFarland. The court authorized the acceptance of this offer in .accordance with the suggestion of the Comptroller and entered an order directing the receiver to accept $2,500 in full and complete settlement of the stock assessment and all his personal liabilities before mentioned. Obviously this included the liability upon the note of J. Earl McFarland of $1,722.03. Again the receiver credited the assessment with $1.

The same rule should be applied here as governs in the case of the Merritts. Mr. McFarland should be credited on his stock assessment with such proportion of $2,500 received as his stock · assessment bore to his total liabilities. Such percentage of $2,500, ,being the amount paid by him upon his assessment, should be the basis for distribution to him as a stockholder paying so much of his assessment.

Margaret Miller was a stockholder in the bank whose assessment was $250. She has paid thereon $10.41. Consequently she is entitled to such percentage of distributions as her payment upon her stock as-

sessment bore to the total assessments received.

D. J. McFerren was indebted to the bank in the sum of $13,000 upon a promissory note and William McFerren in the sum of $14,614.91. Each of them was a stockholder with an assessment of $23,250. These two stockholders were debtors under section 74 of the Bankruptcy Act in this court and an extension agreement was entered into between them and their creditors on November 6, 1933 and approved by the court on December 18, 1933.

The receiver filed a claim in the debtor proceeding for both the stock assessment and the personal liabilities of the debtors. On November 30, 1937 the receiver was authorized by the office of the Comptroller of the Currency to sell the bank's claim against the estate of the McFerrens to the highest and best bidder and such sale was made for 67⅔ per cent of the claim and accrued interest to that date, namely, December 5, 1937, there being received a total sum of $58,184.42. These proceedings were duly approved by the court. As a result, the Illinois Canning Company purchased the claim, procured an assignment thereof and thereafter owned the claim, previously filed in the debtor proceeding. Later the assignee, pursuant to the extension agreement made by the McFerrens with their creditors, elected to and did receive land of the estate at the values therein fixed, for the entire amount of the claim of $86,907.99. The receiver credited the proceeds from the sale of the claim, to the stock assessment liability of each debtor, $18,381.45; to the personal liabilities of D. J. McFerren $10,285.14 and to the personal liabilities of William McFerren $11,729.12. The trustee of the McFerren Estate, which is solvent, and the debtors contend that inasmuch as they paid their assessment and their personal indebtedness in full, they should, in distribution of assets, share in the distribution as stockholders who have paid 100 per cent of their stock assessment. Other stockholders who have paid their assessment in full contend that they should share in the distribution only upon the basis of the prorata credit given by the receiver.

It is to be remembered that the claim upon the assessments and personal indebtedness of these debtors was filed by the receiver in the debtor proceeding and allowed in full; that thereafter it was assigned to the Illinois Canning Company, who collected it in full. Obviously, if the receiver had not sold the claim, he would have collected the claim in full; but to the proceeding authorizing the receiver to sell the claim to the Illinois Canning Company for cash, the debtors and their trustee were not parties. They did not participate therein and are in no wise bound thereby. The debtors have paid their assessments and, under the statute, are entitled to share in the proceeds of distribution as stockholders who have paid their assessments in full. The statutory right thus to share cannot be taken from them by the acts of third parties over which they have no control and in which they have no voice. True, the receiver sold the claim for less than the face amount, but this cannot affect the equities of the persons who paid the claim in full.

The court believes that the shareholders' agent, in making distribution, should include as a basis of computation of total assessments paid all such payments as were made in cash, additional credits to various stockholders as indicated in this memorandum and the full amount of the assessment of the McFerren brothers and treat the total as a basis for distribution to stockholders and then pay to each stockholder such percentage of any distribution made as the total payment of such stockholder upon his assessment bears to the whole of the assessments paid, computed in the manner directed.

The foregoing includes and is adopted as the court's findings of fact and conclusions of law.